NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CLARK DAVIS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | |
| | : | Civil Action No. 07-5023 |
| v. | : | |
| THE ATLANTIC LEAGUE OF PROFESSIONAL BASEBALL CLUBS, INC. | : | Memorandum Opinion |
| Defendant. | : | |

Defendant The Atlantic League of Professional Baseball Clubs, Inc. (the "League") moves for summary judgment against plaintiff Clark Davis ("Davis"), seeking dismissal of the complaint in its entirety. The complaint avers that Davis was discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"). Two instances of discrimination are alleged: (1) Davis was not assigned to umpire a playoff game, and (2) Davis's contract was not renewed for the following year. The League moves for summary judgment.

I. Background

The parties agree that the material facts, for purposes of this motion, are not in dispute and are relatively straightforward. The facts can be summarized as follows. Davis served as an umpire in the League[1] from 2001 through 2006. During his tenure,

---

[1] The League consists of eight teams: the Bridgeport Bluefish, Camden Riversharks, Lancaster Barnstormers, Long Island Ducks, Newark Bears, Somerset Patriots, Southern

Davis was continually awarded an annual Uniform Umpire Contract for the following season. At the conclusion of the regular season in 2006, the League decided against placing Davis on a playoff crew and did not award him with a contract for the 2007 season. Davis claims that his age (52 at the time) was the underlying reason for both of these adverse employment actions.

Specifically, Davis alleges that Joseph Klein, the executive director of the League, explained to him that he was not assigned to the playoffs because he had "been doing it a lot of years, and we're going to give the younger guys a chance." Davis Dep. 144:6-17. Klein denies making the statement, but for purposes of the summary judgment motion argues that it is immaterial; because even if you believe Klein said it, the adverse employment actions taken against Davis are justified on other legitimate grounds. In addition, the League argues that to the extent Klein said it, the statement refers not to Davis's age or ability, but to the experience level of the newer umpires. Reply Br. at pp. 17-18. Nonetheless, Davis was not assigned to the playoffs that year and on November 28, 2006, after the conclusion of the post- season, Klein wrote to Davis to inform him that he was not going to be offered a contract for 2007.

The League justifies both employment actions as legitimate responses to its assessment of Davis's performance in 2006 as poor and in response to his judgment both on and off of the playing field. With respect to the playoff assignment, the League explains that in addition to Davis's poor performance that year, he was involved in an incident with the Long Island Ducks, which was one of the playoff teams, and that the

---

Maryland Blue Crabs, and the York Revolution.

League did not want to create any additional tension by assigning Davis as a playoff umpire. As a matter of convenience, the following series of events during that game with the Ducks will be referred to as "the incident".

The incident occurred while Davis was working as a crew chief during a home game for the Ducks when it began to rain and the Ducks's ground crew- without instruction from the umpires- placed the tarp on the field. The umpire crew retreated to their dressing room to wait out the storm. At some point, they were informed that the rain had stopped and the field was ready. Davis, admittedly annoyed that the field was tarped without his approval, asked to speak to the Ducks's general manager. It is unclear from the record and the parties dispute at which point the general manager was summoned by Davis: whether it was before or after Davis was informed that the game was ready to resume.[2] Nevertheless, Davis spoke to the general manager to inform him of the ground crew's improper tarping of the field. Davis agrees that the meeting delayed his return to the field by approximately five to ten minutes. Davis Dep. 123-124.

On his way back to the field, Davis encountered the owner of the Ducks (who is also the Chief Executive Officer of the League), Frank Boulton, and informed him that the delay was caused by his ground crew's unauthorized tarping of the field. The two men exchanged words and the game resumed. Both Davis and Boulton separately called Klein regarding the incident. The parties agree that this incident occurred, but there is much disagreement on the words spoken, the length of the delay, and the perceived

---

[2] Davis's deposition testimony offers conflicting accounts of what actually happened during that rain delay but does support Defendant's claim that Boulton was unhappy with Davis and told Davis that he held up the game. See generally, Davis Dep., Ex. A., p. 125-126.

seriousness of the incident; Boulton called it insubordination while Davis characterized it as fleeting.

In addition to the incident, the League also cites as of concern the fact that Davis took leave during the 2006 season to attend a high profile poker tournament in Las Vegas, Nevada. Davis asked for and received permission from Joe Klein to be excused from his umpiring duties for one week to attend the tournament. Klein Cert. ¶7. Klein admits extending Davis permission, but characterizes Davis's decision to participate in the tournament as bad judgment; umpires should not be involved in gambling. Id.

Davis was informed that he would not be assigned to officiate the playoffs near the end of the regular season in September 2006 by Mark Facto, the supervisor of the umpires.[3] Davis. Dep. at 143. According to Davis, Facto did not have a reason and instructed him to call Klein. Id. It was during this phone call that Davis claims Klein told him he was not assigned to the playoffs because Klein wanted to give the "younger guys" a chance to officiate the playoffs. Id. at 144.

Most of the 2006 umpire crew were extended contracts for 2007 with the exception of Davis and Alex Quiles (age 50), who allegedly stole a co-worker's wallet. Facto Dep. at 48. The League also contracted with five new umpires for 2007: Luis Sierra (age 49), Randy Jones (age 50), Matt Jones (age 23), Daniel Blanton (age 29), and Shawn Arthur (age 32). Garland Cert. Ex. 11. Eric Diaz was made a crew chief to fill the vacancy left by Davis's departure; his age at the time was 35. Facto Dep. at 49.

---

[3] The regular season ended on September 24, 2006. Ex. H.

II. ANALYSIS

A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 322); accord Fed. R. Civ. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific

facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. ADEA and NJLAD Claims

The complaint avers violations of the ADEA and the NJLAD. Pursuant to the ADEA it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The NJLAD affords similar protection, but does not limit the age restriction to forty years. Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004). Claims brought under the ADEA and NJLAD are considered under the same analytical framework applicable under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq.  Waldron v. SL Indust., 56 F.3d 491, 504 (3d Cir. 1995).

In determining whether age based discrimination motivated an employment decision, a court must first consider which analytical framework governs the claim.  This determination is predicated upon whether the evidence of discrimination is "direct" or "indirect".  Where there is "direct" evidence of discrimination, the test laid out in Justice O'Connor's controlling opinion in Price Waterhouse, 490 U.S. 228 (1989) is applied.  Under this approach, once direct evidence of discrimination is presented by the plaintiff, "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered . . . [her] age." Fakete v. AETNA, Inc., 308 F.3d 335, 338 (3d Cir. 2002)(citing Price Waterhouse, 490 U.S. at 265-266.)  On a motion for summary judgment in a direct evidence case, the burden on the employer is high and must leave no doubt that a rational jury would accept the employer's legitimate reason for the adverse employment action.  Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 514 (3d Cir. 2004).

Alternatively, where there is "indirect", or circumstantial, evidence of discrimination, the burden shifting paradigm articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)  is applied.  Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. Id.  In an age discrimination case, a prima facie case is established where plaintiff can show that he: (1) was a member of the protected class, i.e., was over 40 years old; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. Id. at 802;  Monaco, 359 F.3d at 300. If the

plaintiff is successful in establishing a prima facie case, the defendant must "articulate a legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 803. Where defendant satisfies this burden, "the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

    C. Discussion

    1. Davis's Exclusion from the 2006 Umpire Playoff Roster

As to this adverse employment action, the League concedes that the alleged statement made by Klein qualifies as "direct" evidence of discrimination and that the framework articulated in Price Waterhouse governs. As a result, the only consideration is whether there is any doubt that a rational jury would accept the League's articulated reasons for the adverse employment action. Glanzman, 391 F.3d at 514.

While the League's proffered reasons, which include Klein's personal evaluation of Davis's performance that year, the fact that Davis's gambling trip demonstrated questionable judgment, and the incident with the Ducks, one of the teams in the playoffs, are persuasive, there are facts in the record that challenge these assertions and are sufficient to preclude entry of summary judgment. First, the League does not maintain written performance evaluations for its umpires. Id. at ¶ 6. Instead, oral evaluations are administered based upon a compilation of Klein's personal observations and the input Klein receives from team general managers and managers. Id. This naturally brings Klein's credibility to the forefront, as he was the lone decision maker as to this cause of

action.

There are several conflicting statements regarding Davis's past performance that challenge Klein's reasoning. Notably, Davis was selected to umpire the playoffs in 2004 and 2005, despite Klein's impression that Davis's performance for those years was poor. Klein Dep. at pp. 115-116. In addition, Mark Facto states that Davis had a good year in 2004 and that he did not recall any issues with Davis in 2005. Facto Dep. at p 61. Facto states that he recommended Davis's placement on umpire crews for 2004 and 2005 as a reward for good performance and that Klein participated in those decisions. Id. Davis also gives a favorable review of his own performance and points out that he was a crew chief during 2006.

But, Facto does support some of the concerns articulated by Klein regarding Davis's performance. While Klein states that Davis received complaints from just about every team in the league, he does admit that nearly all of the umpires received complaints in 2006 and that some of the umpires slated for the 2006 playoff roster had been the subject of complaints by at least one of the playoff teams. Klein Dep. at p. 69. Thus, there is conflicting evidence related to Davis's past performance.[4]

---

[4] The Court is not second guessing the League's use of performance criteria or the incident as proper grounds for its decision. See Simpson v. Kay Jewelers, Inc., 142 F.3d, 639, 647 (3d Cir. 1998)(stating that a court should not second guess the measure of performance utilized by an employer's decision-making). There is no dispute that the incident occurred and Klein is rightfully entitled to evaluate its significance and take appropriate action. Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). But it is noteworthy that Klein did not advance the incident as his justification for the decision at the time it was made. This undermines the incident's value as the motivating factor for the playoff decision and leaves room for a jury to consider whether it is "a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000)("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is

Second, the fact that Davis was permitted to remain on the roster for six games involving the Ducks after the incident undermines the League's explanation that Davis was not placed on the playoff roster out of concern that there may be a future confrontation with the Ducks.[5] There is no evidence that there were any issues during these remaining regular season games. There is also evidence in the record that suggests that complaints by the Bridgeport Bluefish about another umpire did not prevent the League from assigning that umpire, who was twenty years younger than Davis, to the 2006 playoffs. Klein Dep., Ex. B. at p. 80. Of course the League was free to be more selective with the playoff assignments so as to avoid any potential instance of impropriety. But the League could have assigned Davis to the other divisional series as they had in the past.[6] Whether its failure to do so was predicated on age based discrimination presents a genuine issue for the jury. At the very least, Davis has cast enough doubt as to the legitimacy of the proffered reasons. See Fuentes, 32 F.3d at 764, n.7 (noting that casting doubt on a few of the many proffered legitimate reasons may be enough to challenge the credibility of the employer and preclude summary judgment).

Finally, and significantly, at the time Davis was informed that he was not going to

---

dissembling to cover up a discriminatory purpose.")

[5] The League argues that the regular season umpire assignments, including the six games Davis umpired for the Ducks following the incident, were set at the beginning of the season. The playoff roster was set after the incident and was, therefore, subject to discretion.

[6] During the 2005 season, Davis was flown in for the championship series. He did not umpire any divisional games in that playoff series. Davis Dep., Ex. A, at pp. 198-99. Davis could have been assigned to the other divisional series which did not include the Ducks so as to avoid any potential conflict. This fact casts doubt on the likelihood that the incident was a motivating factor for the playoff decision.

be assigned to the playoffs, Klein did not tell him that the incident with the Ducks played any role in that decision. In fact none of the reasons articulated in support of Defendant's motion for summary judgment were ever identified to Davis as the basis for the decision to forgo an umpire playoff assignment. See Fuentes, 32 F.3d at 764. Viewing the facts in a light most favorable to Davis, there is a genuine issue as to whether the League is merely trying to conceal its illegal act with the articulated reasons. Hicks, 509 U.S. at 510-11. This case presents a close call, but Davis has shown "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action [and] a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes, 32 F.3d at 765 . The League has not met its burden under Price Waterhouse and summary judgment is denied on this ground.

    2. The Non-Renewal of Davis's Contract

    Claims based on a failure to renew a contract are considered an "employment action" and, where an invidious reason is alleged, are subject to McDonnell Douglas and/or Price Waterhouse. Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 320 (3d Cir. 2008)(stating that the that "failure to rehire can constitute an adverse employment action" and that an "employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII")(citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir.2003)). The parties disagree on whether Price Waterhouse or McDonnell Douglas governs the League's decision not to re-hire Davis. At the heart of the dispute is whether Klein's alleged statement about giving "younger guys a chance to get playoff experience" constitutes "direct" or "indirect" evidence of

11

discrimination with respect to the contract decision.

To qualify as "direct" the "evidence must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.' " Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)(citing Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir.1997)(quoting Price Waterhouse , 490 U.S. at 277)(O'Connor, J., concurring). Making this determination can be challenging as "the adjective 'direct' is imprecise because certain circumstantial evidence is sufficient [to shift the burden of proof regarding causation], and if that evidence can fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision." Fakete, 308 F.3d at 339. (internal citation and quotation omitted). Considerations in qualifying a statement as "direct" include the temporal relationship of the statement to the complained of action, Ezold v. Wolf, Block, Schorr, & Solis-Cohen, 983 F.2d 509,545 (3d Cir. 1992), and the relationship of the statement to the plaintiff's job, Hook v. Ernst & Young, 28 F.3d 366, 375 (3d Cir. 1994).

Assuming that the statement was made and based upon the record before the Court, it appears at this juncture that the statement is related to Davis's ability to do his job.[7] The League disagrees and argues that the statement would only be relative to Klein's desire to get his younger umpires more experience and is not a reflection on Davis's ability to do his job. In addition, the League contends that the statement does not

---

[7]At this stage in the litigation, it appears that the alleged statement constitutes direct evidence of discrimination. That determination may change during trial, particularly here where there is a dispute over whether the statement was made at all and the record does not adequately reflect the conditions in which the statement was made. See e.g., Armbruster v. Unisys Corp., 32 F.3d 786, 782, n.17 (3d Cir. 1994) abrogated on other grounds (noting that at summary judgment stage, evidence did not trigger Price Waterhouse, but that the evidence at trial could).

address the future employment of Davis and does not suggest that Klein had a problem with older workers. [8]

It is impossible to discern on this record, especially since Klein disputes making the statement, whether the statement is related to experience level. It may well be, but viewing the facts favorably for Davis, the counter-arguments are just as plausible. Klein was the lone decision maker in the process and he is alleged to have made the statement.[9] Thus, the statement was made by the decision maker prior to the complained of act, indicating that the statement is related to the contract decision. Glanzman, 391 F.3d at 513.

The next consideration is the temporal relationship of the statement to the contract decision, which in this case is close enough to link the statement to that decision. Klein's statement was made to Davis in late August or September of 2006. The letter sent to Davis informing him of the League's contract decision is dated November 28, 2006. Klein testified that he attempted to telephone Davis several times before sending the letter, indicating that the decision was made, at least a week before the letter was sent, but could have been earlier. Nevertheless, the relationship of the statement and the

---

[8] To the extent that the statement is related to experience, it is well settled that decisions based on seniority are not evidence of age discrimination. See, e.g., Williams v. General Motors Corp., 656 F.2d 120, 130, n. 17 (5th Cir. 1981) ("[S]eniority and age discrimination are unrelated.... We state without equivocation that the seniority a given plaintiff has accumulated entitles him to no better or worse treatment in an age discrimination suit."); EEOC v. Clay Printing Co., 955 F.2d 936, 942 (4th Cir. 1992) (noting distinction between employee's age and years of service).

[9] Facto testified that one of his duties as supervisor was to recommend the termination of umpires, which he did on at least twelve occasions. Facto Dep., Ex. D. at p. 16. However, he did not participate in any discussions with Joe Klein related to the decision to terminate Davis, nor did he recommend that Davis be terminated. Id. at p. 45.

adverse employment action are not so temporally remote so as to cast doubt on their connectedness. Cf. Ezold, 983 F.2d at 545 (five years time passed between the discriminatory comment and the adverse employment action prompting the court to analyze complaint pursuant to McDonnell Douglas.).  As a result, for purposes of this motion, the Court finds that the statement is related to Davis's continued employment and that the statement constitutes direct evidence of discrimination.  As a result, the burden shifts to the League to identify a legitimate reason for the action.

      The League again cites performance, the incident with the Ducks, and the fact that Davis participated in a gambling tournament to justify its decision.  With respect to performance, the testimony of Mark Facto undermines the League's reason for the contract decision.  Facto agreed that Davis did not have a good year in 2006, but testified that he never personally disciplined Davis, nor did he recommend Davis's termination to Klein.  Klein Dep., Ex. B. at p. 94-95; 115; 117-118; see also Facto Dep., Ex. G. at p. 61. Facto was also unaware of the reason for Klein's decision regarding Davis's contract. Id.

      In addition, Klein's reliance on Davis's participation in poker tournament as evidence of bad judgment is weakened by the fact that he approved the absence.  In addition, Davis certified that it was well known to Klein that he played in poker tournaments during his tenure with the League and that Mr. Facto also gambled when they were in Atlantic City.  Davis Cert. ¶ 15.  Viewing the facts favorably to Davis, it appears that Klein did not take issue with Davis's gambling in the past, nor the gambling of other umpires.  The question of why the gambling presented an issue during the 2006 season casts doubt on this justification.

      Taken together, all of the above reasons, even if only slightly, challenge the

League's proffered reasons for the contract decision precluding summary judgment under Price Waterhouse.[10]

For the sake of completeness, Defendant's motion would also be denied under McDonnell Douglas. Defendant does not contest that Davis has established a prima facie case of age discrimination: he was over forty years of age at the time of the adverse employment decisions, there is evidence that he was at least minimally qualified for the position, he suffered an adverse employment action, and he was replaced by a group of umpires that included persons of lesser age. In addition, Facto testified that the crew chief who replaced Davis was less than forty years of age. Facto Dep. at 49. Thus, the Court finds that Davis has established a prima facie case of age discrimination.

As explained above, Defendant has met its burden by putting forth several legitimate, nondiscriminatory reasons for choosing to forgo renewal of the employment contract: unsatisfactory performance in 2006, the confrontation with Boulton, and the questionable conduct related to the gambling tournament. Thus, Plaintiff must demonstrate that Defendant's proffered reasons are pretextual.

To satisfy this burden on a motion for summary judgment, a plaintiff must "point

---

[10]Defendant's argument that this case is akin to Glanzman, 391 F.3d 513 is unpersuasive. While Glanzman certainly reflects that the "high hurdle" for summary judgment in a Price Waterhouse case can be cleared, the facts of that case are distinguishable. The plaintiff in Glanzman had been issued numerous warnings regarding violations of company policy, which were reflected in her record, "was caught committing even more serious violations", and was caught in a lie. 391 F.3d at 515. The facts of this case are not as egregious as those in Glanzman. There is no evidence that Davis was warned about his performance or that he was disciplined for his involvement in the incident. And while there is evidence in the record to substantiate some of Klein's characterizations of Davis's performance, none of these complaints resulted in any form of discipline or were made part of his employment record. To the contrary, in the years preceding 2006, Davis was awarded a spot on the playoff roster and was made a crew chief.

to some evidence, direct or circumstantial, from which a fact finder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 330-31 (3d Cir. 1995) (citing Fuentes, 32 F.3d at 763-64). The fact finder may infer from the combination of the plaintiff's prima facie case, as well as its own rejection of the employer's proffered non-discriminatory reason, that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reason. Hicks, 509 U.S. at 510-11.

For the same reasons expressed in the discussion regarding the playoff decision, viewing the facts in a light most favorable to Plaintiff, there is evidence in the record that weakens Defendant's proffered reason for the termination and creates a genuine issue as to the true motivation behind Defendant's decision on the contract issue. Thus, summary judgment under the dictates of McDonnell Douglas is denied.

### III. Conclusion

Plaintiff has met his burden on this motion in demonstrating conflicts, inconsistencies, and weaknesses in the record so as to preclude the entry of summary judgment as to both adverse employment actions. For the reasons stated above, in addition to the reasons stated on the record during oral argument, Defendant's motion for summary judgment is denied. An appropriate order will issue.

Dated: June 2, 2009.

                                                /s/ Joseph H. Rodriguez
                                                JOSEPH H. RODRIGUEZ,
                                                United States District Judge